**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**SARAH RABUCK,**

        **Plaintiff,**

**v.**                                                 **Case No: 6:24-cv-1586-PGB-DCI**

**POLLACK & ROSEN, P.A.,**

        **Defendant.**

_____/

**<u>ORDER</u>**

This cause comes before the Court on Plaintiff Sarah Rabuck's ("**Ms. Rabuck**") Amended Motion for Partial Summary Judgment. (Doc. 42 (the "**Motion**")). Defendant Pollack & Rosen, P.A. ("**Debt Collector**") filed a response in opposition to the Motion (Doc. 43 (the "**Response**")), and Ms. Rabuck replied thereto (Doc. 44 (the "**Reply**")). The parties also filed a Joint Stipulation of Material Facts. (Doc. 37). Upon consideration, the Motion is due to be granted.

**I.    BACKGROUND**

This lawsuit arises from Debt Collector's attempt to collect a third-party debt from Ms. Rabuck. (*See generally* Doc. 1-1 (the "**Complaint**")). Ms. Rabuck brings this action against Debt Collector under the Fair Debt Collection Practices Act ("**FDCPA**"). 15 U.S.C. § 1692. Debt Collector's debt collection efforts are governed

by the FDCPA. 11 U.S.C. § 1692a(6); (Doc. 37, ¶ 1). Ms. Rabuck is a consumer as defined by the FDCPA. 11 U.S.C. § 1692a(3); (Doc. 37, ¶ 3).

On July 22, 2024, Debt Collector filed a lawsuit against Ms. Rabuck (the "**Collection Lawsuit**") to recover credit card debt on behalf of its client, UHG I, LLC. (Doc. 37, ¶ 2). The Collection Lawsuit was filed in Small Claims Court in Seminole County, Florida. (*Id.* ¶¶ 2, 4).

After filing the Collection Lawsuit, Debt Collector unsuccessfully attempted to serve Ms. Rabuck. (Doc. 43, p. 14). In fact, Ms. Rabuck was never formally served with the complaint in the Collection Lawsuit. (Doc. 37, ¶ 8). Rather, Ms. Rabuck learned of the lawsuit through attorney solicitations she received in the mail. (*Id.*). Ultimately, on September 3, 2024, Ms. Rabuck's counsel appeared at the pretrial conference in the Collection Lawsuit and informed Debt Collector's counsel that the Collection Lawsuit had been filed in the wrong county. (*Id.* ¶¶ 12–13). Soon thereafter, Debt Collector filed a motion to transfer venue of the Collection Lawsuit to Orange County, Florida. (*Id.* ¶ 14).

Ms. Rabuck initiated the instant action in state court on August 3, 2024. (*See* Doc. 1-1). Debt Collector then removed the action to this Court. (Doc. 1). Ms. Rabuck argues that Debt Collector violated § 1692i of the FDCPA (the "**Venue Provision**") because a debt collector may only bring legal action on a debt against a consumer in the judicial district in which "such consumer signed the contract sued upon" or "such consumer resides" at the start of the action. 15 U.S.C. § 1692i; (Doc. 1-1). However, at the time Debt Collector filed the Collection Lawsuit, Ms.

Rabuck lived in Orange County, Florida—not in Seminole County, Florida. (Doc. 37, ¶¶ 5–6). Moreover, the contract forming the basis for the alleged debt was neither signed nor executed in Seminole County, Florida. (Doc. 1, ¶¶ 14–16).

In due course, on October 4, 2024, Debt Collector filed its Answer and Affirmative Defenses to the Complaint. (Doc. 22). Pertinent to the instant Motion, Debt Collector raised the affirmative defense of *bona fide* error.[1] (Doc. 22, p. 4). In support of this defense, Debt Collector asserts that it is "required to a run a skip trace"[2] prior to initiating a lawsuit in order to ensure commencement in the right location. Debt Collector provides an exhibit evincing that it conducted the required procedure (Doc. 42-5 (the "**Skip Trace Exhibit**")). The Skip Trace Exhibit appears to be dated December 30, 2024 and indicates that Ms. Rabuck lived in Orange County from November 5, 2005 to October 8, 2024, and in Seminole County from November 13, 2007 to June 27, 2024.[3] (Doc. 42-5, p. 2). Debt Collector provides another exhibit (Doc. 42-4 (the "**Memo**")) addressed to "All Consumer Debt Clients" that indicates that Debt Collector will either use the

---

[1] On October 29, 2024, Ms. Rabuck filed a Motion to Strike Debt Collector's Affirmative Defenses. (Doc. 31 (the "**Motion to Strike**")). The Court granted in part and denied in part Ms. Rabuck's Motion to Strike. (Doc. 38). However, the Court allowed Debt Collector's affirmative defense that filing in the wrong county was the result of a *bona fide* error to proceed. (*Id.* at pp. 9–10).

[2] A skip trace is "the process of developing new telephone, address, job or asset information on a customer, or verifying the accuracy of such information." *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1040 n.1 (9th Cir. 2012).

[3] The parties do not stipulate that the skip trace was conducted on December 30, 2024. In fact, Debt Collector does not address the date that the skip trace was conducted. Alas, the findings of this Court rely on the date printed on the Skip Trace Exhibit and Debt Collector's failure to provide evidence disputing Ms. Rabuck's contention that the skip trace was conducted after the Collection Lawsuit was filed.

Client's process or Debt Collector's own skip trace process to determine the venue in which to file suit. (Doc. 42-4, p. 3). Debt Collector indicates that it performed the skip trace to determine where to file suit against Ms. Rabuck pursuant to its policy requiring its attorneys to determine the correct venue before filing suit. (Doc. 43, ¶ 36).

In the Motion, Ms. Rabuck requests that the Court grant partial summary judgment in Ms. Rabuck's favor as to Debt Collector's liability. Ms. Rabuck contends that there is no genuine dispute of material fact that Debt Collector violated the FDCPA at the time it filed the Collection Action against Ms. Rabuck in the wrong county, and that the violation was not a result of a *bona fide* error. (Doc. 42). Debt Collector responded in opposition (Doc. 43), and Ms. Rabuck replied (Doc. 44). The matter is now ripe for review.

## II. STANDARD OF REVIEW

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted)).

The Court must "view the evidence and all factual inferences therefrom in the light most favorable to the [nonmoving] party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir. 2015) (quoting *Carter v. City of Melbourne*, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam)). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

Importantly, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis omitted). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* (internal quotations omitted). "Such a motion, whether or not accompanied by affidavits, will be made and supported as provided in this rule, and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted).

## III.   DISCUSSION

Ms. Rabuck moves for partial summary judgment as to Debt Collector's liability under the FDCPA. (Doc. 42, p. 1). In the Motion, Ms. Rabuck argues that she is entitled to summary judgment because: (A) Debt Collector violated § 1692i's venue provision by filing its Collection Lawsuit in Seminole County, where Ms. Rabuck neither resided nor signed the underlying contract, and (B) Debt Collector cannot maintain its *bona fide* error defense. (Doc. 42, pp. 1–2, 16). Debt Collector opposes the Motion, arguing that it did not violate § 1692i because service was never effectuated in the Collection Lawsuit. (Doc. 43, p. 5). In the alternative, the Debt Collector argues that its violation of § 1692i was the result of a *bona fide* error. (Doc. 43, p. 8).

### A.   Debt Collector's Liability under the Venue Provision

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to [ensure] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010). The act authorizes private civil actions against debt collectors who engage in certain prohibited conduct. 15 U.S.C. § 1692k(a). Consumers affected by the aforementioned conduct may bring an action under the FDCPA "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Importantly, the Venue Provision requires debt collectors to bring their collection

6

suits in either the judicial district where the consumer signed the contract at issue or the judicial district in which the consumer resides at the commencement of the action. 15 U.S.C. § 1692(i).

It is undisputed that Debt Collector filed the Collection Lawsuit in Seminole County, Florida. (Doc. 37, ¶¶ 2, 4). At this time, Ms. Rabuck neither lived in nor signed the contract sued upon in Seminole County, Florida. (*Id.* ¶¶ 5–6); (Doc. 1 ¶¶ 14–16). The sole disputed issue before the Court is when a violation of the statute accrues. Some courts consider the act of *filing* a lawsuit, rather than *serving* a suit, as the moment an actionable violation of the Venue Provision occurs. This is purely a question of law and is the subject of great debate in the federal courts. The Eleventh Circuit has not yet addressed this question definitively.

In support of its interpretation of the Venue Provision, Debt Collector cites decisions from the Tenth and Fifth Circuits, including *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002), and *Serna v. Law Office of Joseph Onwute, P.C.*, 732 F.3d 440, 446 (5th Cir. 2013), which hold that the statute of limitations period for claims under the Venue Provision begins only upon service of the lawsuit. These courts assert that "no harm immediately occurs [upon filing] because the debtor likely has no knowledge of the suit and has no need to act." *Serna,* 732 F.3d at 445.

The Court is not persuaded by this precedent. Importantly, the Court considers that the:

> filing [of] a complaint may cause actual harm to the debtor: a pending legal action, even pre-service, could be a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and

7

> employers. The debt collector may also use the pending legal action to pressure a debtor to pay back the debt informally, without serving the complaint—precisely the type of unfair practice prohibited by the FDCPA.

*Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082–83 (7th Cir. 2013).

Accordingly, the Court holds that FDCPA imposes liability when a debt collector files a lawsuit in an improper district, regardless of whether service of process has occurred. Thus, a violation of the Venue Provision accrues upon *filing* the Collection Lawsuit. This conclusion aligns with the FDCPA's focus on regulating debt collector conduct. *See LeBlanc*, 601 F.3d at 1190.

Filing the lawsuit in the improper county is the action that constitutes the violation of the Venue Provision and exposes the debt collector to liability. There is no dispute in the record that Debt Collector filed the Collection Lawsuit in a forum that Ms. Rabuck did not reside. (Doc. 37, ¶¶ 2, 4). Therefore, the Court finds there is no genuine dispute of material fact as to Debt Collector's liability under the Venue Provision. *See* FED. R. CIV. P. 56(a).

### B. *Bona Fide* Error Defense

"The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional. . . . Nevertheless, the FDCPA affords a narrow carve-out to the general rule of strict liability, known as the '*bona fide* error' defense." *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). The debt collector has the burden of proof in bringing this affirmative defense. *Id.* at 1271. "A debt collector asserting the *bona fide* error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional;

8

(2) was a *bona fide* error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009) (citing *Johnson v. Riddle*, 443 F.3d 723, 727–28 (10th Cir. 2006)). Importantly, the "failure to meet any one of those three requirements is fatal to the defense." *Edwards*, 584 F.3d at 1353.

In arguing that it fulfills all three requirements of the *bona fide* error defense, Debt Collector contends that (1) it performed a skip trace as part of its policy for determining the correct venue in which to file suit, (2) the error was unintentional because the Skip Trace Exhibit "appears to show that . . . [Ms. Rabuck] resided in Seminole County, Florida at the time of the lawsuit," and (3) Debt Collector filed a motion to transfer once it learned of the error. (*Id.* ¶¶ 36–38).

Regarding the first two elements of the *bona fide* error defense, Debt Collector provides an insufficient factual basis for a jury to find that its violation was unintentional and resulted from a *bona fide* error. The only factual support provided by Debt Collector is a skip trace report that it allegedly used to determine where to file suit and, when it learned of its error, Debt Collector filed a motion to transfer venue. (*Id.*; Doc. 43-1).

First, the Skip Trace Exhibit is insufficient because it was conducted *five months after* the Collection Lawsuit was filed. Additionally, the Debt Collector's motion to transfer venue does not absolve the initial error. While some courts have found that a timely motion to transfer venue can preserve this defense, courts

typically determine that the defendant had no reason to know it made a mistake. *See, e.g.*, *Parkis v. Arrow Fin. Servs., LLS*, 2008 WL 94798, at *8 (N.D. Ill. Jan. 8, 2008) (permitting Defendant to assert *bona fide* error defense because "[p]laintiff admits that, prior to summons, [defendant] had no reason to believe the . . . address was not good as [defendant] had received no indication that the address was in error."). Yet in this case, the error was a result of Debt Collector's failure to conduct a timely skip trace; thus, the Debt Collector was on notice of a potential error.[4]

In *Owen v. I.C. System, Inc.*, the Eleventh Circuit laid out an expansion to the third element of the *bona fide* error defense, which involves the maintenance of procedures reasonably adapted to avoid the error at issue. *Owen*, 629 F.3d at 1273–74. The third requirement of the defense is a two-step inquiry. *Id.* at 1274. The first stage of the inquiry is "whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors." *Id.* (quoting *Johnson*, 443 F.3d at 729). The second stage of the inquiry is "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* (quoting *Johnson*, 443 F.3d at 729). The procedures component of the *bona fide*

---

[4] Ms. Rabuck also argues that, according to the Skip Trace Exhibit, the last date Ms. Rabuck might have lived in Seminole County was approximately one month prior to when the Collection Lawsuit was filed, whereas the last date Ms. Rabuck might have lived in Orange County was approximately three months after the Collection Lawsuit was filed, suggesting that Debt Collector knew that it was filing in the wrong county. (Doc. 42, p. 1). However, this does not confirm Debt Collector's awareness that Ms. Rabuck resided in Orange County at the time of filing because the skip trace was performed *after* the Collection Lawsuit was filed. In fact, there is no evidence indicating where Debt Collector believed Ms. Rabuck resided at the time of filing.

error defense is a "fact-intensive inquiry." *Id.* (quoting *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008)). The Eleventh Circuit has emphasized that the third element of the *bona fide* error defense should be resolved on a case-by-case basis and has declined to impose precise requirements about what procedures would allow debt collectors to adequately qualify for the defense. *See Owen*, 629 F.3d at 1277.

The Supreme Court also addressed the procedures component in *Jerman v. Carlisle*, wherein it explained that the word "procedures" in the third step must involve a "routinized process of error-checking" in order for the Debt Collector to qualify for the *bona fide* error defense. *Id.* at 1272 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 586(2010)). *Jerman* also notes that "[t]he dictionary defines 'procedure' as 'a series of steps followed in a regular orderly definite way.'" *Id.* (quoting *Jerman*, , 559 U.S. at 586).

In her Motion, Ms. Rabuck argues that the *bona fide* error defense is not available to Debt Collector because Debt Collector fails to describe a process or procedure reasonably adapted to avoid the error at issue. (Doc. 42, p. 18). The Memo provided by Debt Collector gives clients the option to either use their own

procedure to determine where to file or Debt Collector's skip trace procedure.[5,6] (Doc. 42-4, pp. 1–3). Ms. Rabuck argues that the skip trace used here was not a procedure reasonably adapted to avoid the error at issue because it was performed after the filing of the Collection Action. (Doc. 42, p. 20).

Debt Collector has not met its burden with regard to the third element of the *bona fide* error defense. Starting with the first stage of the two-step inquiry, Debt Collector has not established that it actually employed procedures to avoid errors. Debt Collector indicates that it had a policy and procedure that was designed to avoid errors. However, those procedures were clearly not followed here. If Debt Collector's procedure normally included performing a skip trace prior to filing suit in order to determine the proper county in which to file, the date at the top of the skip trace would indicate that this procedure was not followed here, as the skip trace indicates that it was performed after the Collection Lawsuit was filed. (Doc.

---

[5] This Court acknowledges, but does not find it necessary to analyze, Ms. Rabuck's allegation that Debt Collector manufactured evidence to evade liability. (Doc. 42, pp. 20–21). Debt Collector has failed to meet its burden of proving that it adhered to a procedure reasonably adapted to avoid the error at issue by determining where to file suit *prior* to filing suit. Therefore, whether or not evidence was manufactured by Debt Collector is immaterial because Debt Collector has, regardless of this issue, not met its burden.

[6] At times, Ms. Rabuck refers to the Memo as Debt Collector's "policy and procedure" when discussing the procedures component of the *bona fide* error defense. (Doc. 42, p. 18). In accordance with Debt Collector's Response, this Court chooses to view the skip trace as Debt Collector's policy and procedure and the Memo as a description of such policy and procedure. Additionally, Ms. Rabuck argues that "the *bona fide* error defense does not shield debt collectors who unreasonably rely on creditors' representations." (Doc. 42, p. 19 (italics added)). Although Debt Collector discusses using its clients' processes to determine where to file suit in the Memo, Debt Collector chose to perform a skip trace in this case. Debt Collector does not indicate that it used any other procedure to determine where to file suit other than its skip trace process. Therefore, references in the Memo to clients' processes are not relevant here.

12

43-1, p. 3). If the function of the skip trace is to determine the proper county in which to file suit in order to avoid filing in the wrong venue, Debt Collector did not properly follow its procedure because performing the skip trace after filing would defeat the entire purpose of the skip trace.

The second stage of the two-step inquiry asks whether the procedures were reasonably adapted to avoid the specific error at issue. *Owen*, 629 F.3d at 1273–74. If the point of the skip trace process was to avoid the filing of a lawsuit in the wrong venue, it was not reasonably adapted to do so. The skip trace could not have possibly prevented the violation if it was performed after the violation had already occurred. Therefore, Debt Collector has not met its burden and fails to bring a *bona fide* error defense. *See id.*

## IV. CONCLUSION

Accordingly, Ms. Rabuck's Amended Motion for Partial Summary Judgment (Doc. 42) is **GRANTED**.

**DONE AND ORDERED** in Orlando, Florida on October 14, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties